FILED
2008 Jun-27  PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

08 JUN 26  AM 11: 18

U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| JAMES TANNEHILL, II | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CV-08-HGD-1142-S |
| TROY KING, in his official capacity as | ) |
| Attorney General, State of Alabama; | ) |
| TOMMY RAGLAND, in his official capacity as | ) Civil Action No.____ |
| Madison County Judge of Probate and in his | ) |
| individual capacity; | ) |
| DONNA GEIGER, in her official capacity as clerk | ) |
| in the Madison County Judge of Probate office | ) |
| and in her individual capacity; | ) |
| BENJAMIN R. RICE; | ) |
| ELLEN MELSON; | ) |
| JEFFREY ENFINGER and; HERITAGE | ) |
| PLANTATION, INC. | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

This complaint is brought to vindicate the plaintiff's Constitutional

rights to due process and further redress injuries through the civil suit

provision of the Racketeer Influenced and Corrupt Organizations Act which

makes it unlawful "for any person employed by or associated with any enterprise engaged in a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c); as defined in § 1961 to include crimes chargeable under state law, a scheme or artifice to commit mail fraud, § 1341; wire fraud, § 1343; including the deprivation of honest services, § 1346 and; 18 U.S.C. § 2314. The Court is also respectfully requested to hear plaintiff's related state tort claims.

## I. JURISDICTION AND VENUE

1.  This Court's jurisdiction is invoked pursuant to the provisions of:

    a. The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.  This Court has subject matter jurisdiction over the claims for relief arising under RICO pursuant to 18 U.S.C. § 1964(c), providing for civil remedies.

    b. 28 U.S.C. §1332, federal jurisdiction over cases involving complete diversity of the plaintiff and defendants who are citizens of different states.

    c. 28 U.S.C. §1331, Federal question arising under the Constitution and laws of the United States and 42 U.S.C. § 1983. The Court is authorized to grant both declaratory and injunctive relief under 28 U.S.C.

2

§ 2201 and § 2202.  This Court may exercise ancillary jurisdiction under 28
U.S.C. § 1367(a) to hear claims under the Constitution and laws of Alabama.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)
and (2) and (c). Given plaintiff's diversity and the dispersion of defendants
and anticipated witnesses throughout Alabama, this venue represents the
least burdensome and most economical alternative given that no one venue
may satisfy all parties' and persons' personal druthers.  [fn 1 and 2]

## II. PARTIES

### Plaintiff

3.  Plaintiff James Tannehill and wife Robyn L. Tannehill ("the
Tannehills) have at all times relevant to this action been, citizens of the
United States and the State of Colorado. James Tannehill is a former United
States Air Force officer.  A military career is a joint undertaking for married
couples and Mrs. Tannehill, took an active part in the military community
support programs while caring for their three children during Lieutenant
colonel Tannehill's frequent absence on military duty.

---

[1] See 28 U.S.C. § 1391(b)(1) and (2) providing that the venue of this complaint be within
the greater Northern Judicial District of Alabama encompassing both the Northeastern
division and this Southern Division.

[2] See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509, 67 S.Ct. 839, 843, 91 L.Ed. 1055
(1947), "…the plaintiff's choice of forum should rarely be disturbed".

4.  After his retirement from the Air Force the Tannehills entered into the business of designing and producing products to serve the needs of the handicapped and military members and families throughout the world. Their business, Legacy Group, Ltd., was incorporated in Colorado in 1989 and employed national magazine advertising, direct response (mail order) and telephone response with product fulfillment made through interstate and foreign carriers. Initially their small business was based out of their home but it grew and needed to be expanded. Having explored various relocation options through multiple trips to north Alabama, the Tannehills found what they believed was an ideal location and building contractor, Mark Harris Homes, L.L.C., ("Harris") in Huntsville, Alabama in 2003.  The house/business was to be built according to plans ordered from the architectural firm of Frank Betz Associates, Inc. of Kennesaw, Georgia meeting their personal living space needs on one level with approximately 2000 square feet of space on the lower level dedicated to business use.

5.  The Tannehills' efforts to relocate their home and business from Colorado to Alabama have been stymied by builder contract defaults and surveyor/Madison County frauds resulting in protracted litigation.   The Tannehills continue to be unable to relocate their home/business due to the outrageous acts of an Enterprise identified herein operating within and

4

through the Madison County Probate Court judiciary with the specific purpose of defrauding outsiders such as the Tannehills of their property and judgment interests in the home/business they contracted to have build and the honest services of the Madison County Probate Court itself.

State Defendant

6.  Defendant Troy King, the Attorney General of Alabama, is named herein with respect to the State of Alabama's statutory deprivation of plaintiff's rights and Constitutional challenge to § 6-5-50 and § 12-13-16, Code of Alabama, 1975.  See § 6-6-227 Code of Alabama, 1975 and Rule 4(j)(2), Fed.R.Civ P.

Associated-In-Fact Co-Conspirators in the<br>RICO Enterprise [fn3] (Collectively "the RICO Defendants")

7.  Tommy Ragland ("Ragland") was first elected Judge of Probate, Madison County, Alabama in 2000.  He was reelected in 2006. Before that he served as County Tax Collector from 1984 – 2000.  As Judge of Probate he is not required by law to be "learned in the law" nor, upon information and belief, is he licensed to practice law in Alabama.  Art. VI, §154, Alabama Constitution.

---

[3] See also state law claims against these defendants pursuant to §13A-8-1 et seq. and 13A-4-3, Code of Alabama, 1975,Theft and Criminal Conspiracy

8.  The Madison County Probate Court is a function of Madison County government which has historically been the recipient of substantial federal grants including those from department of Justice and Homeland Security. Article VI, Section 149, Alabama Constitution.

9. Sections 12-13-1 et. seq., Code of Alabama apply to probate courts generally and probated judges specifically. Included among Ragland's statutory duties are the requirement to maintain indexes of instruments filed for record § 12-13-43 and to keep minutes and "keep constantly in his office a well-arranged docket, showing the date of the issue and return of all process, the day set for the hearing, the kind of notice ordered, the returns of the sheriff and such other entries as may be necessary to show the true condition of all proceedings pending in the court..." §12-13-41.

10.  Ragland is knowledgeable of his judicial and administrative duties and responsibilities as above and including the coding, indexing, recording procedures used in Madison County and of statutory service of process requirements as set out in the Alabama Rules of Civil Procedure ("Ala.R.Civ.P.") controlling Probate Court pleading and practice pursuant to §12-13-12.

11.  In his capacity as Judge of Probate, Ragland had access to the Alabama Rules of Civil Procedure, Statutes contained in the Code of

6

Alabama 1975, case law and Probate Court records, documents and case files at times relevant to this action.

12.  The office of Judge of Probate in which Ragland conducts much of his daily activity, and the official website of the Judge of Probate give public notice, and Ragland knew, that: "Due to the complexity of laws and procedures of the Probate Court, you are to seek the advice of an attorney. We are prohibited by law to offer any legal advice." See §12-13-16, preparation of papers etc., and Section §34-3-11, judges not to practice law.

13.  Ragland, as Probate Judge, is a designated "conservator of the peace" in Madison County, §12-13-39, Code of Alabama, 1975 and is sworn to: "support the Constitution of the United States, and the Constitution of the State of Alabama…" Article XVI, Section 279, Alabama Constitution.

14.  Ragland is a long time political cohort of former state senator Jeffrey Enfinger, named Defendant herein, and an indispensable member of the RICO Enterprise, without whose participation the scheme, described in detail herein, could not have been carried out.

15. Ragland is sued in his individual capacity for his personal actions, omissions, tortious and criminal acts beyond and outside the scope of his legitimate official duties; in his official capacity and on his official bond which he was required to obtained and  maintains as surety for his

7

performance.[fn4]  See among other authorities cited herein: 42 U.S.C. §1983; §§12-13-34, 12-13-16, and §36-5-18, Code of Alabama 1975.

16.  Donna Geiger ("Geiger") was, at times relevant to this action, a Probate Court Clerk and employee of the Madison County Judge of Probate and citizen of the State of Alabama.  Upon information and belief Geiger is not an attorney licensed to practice in Alabama and as an employee of the Probate Court prohibited from practicing law therein.  § 34-3-8

17. As an employee of the Madison County Probate Court and acting under the direction of Ragland, Geiger had access to the Alabama Rules of Civil Procedure, Statutes contained in the Code of Alabama 1975, case law and Probate Court records, documents and case files.

18.  The Judge of Probate office in which she conducted much of her daily work, and the official website of the Judge of Probate contained public notice, and Geiger knew, that:  "Due to the complexity of laws and procedures of the Probate Court, you are to seek the advice of an attorney. We are prohibited by law to offer any legal advice." See §12-13-16, preparation of papers etc.  Geiger is an associated-in-fact member and enabler of the RICO Enterprise's successful scheme to defraud.

---

[4] Surety Bond No. 103291080 in the amount of $125,000.00 on the surety of Travelers Casualty and Surety Co., of America, Hartford, CT., 06183

19.  Geiger is sued in her individual capacity for her actions, omissions, tortious and criminal acts in her official capacity within and without the scope of her legitimate, ministerial duties; in her official capacity and on Ragland's official bond as a person connected with alleged official acts and omissions. See among other authorities cited herein: 42 U.S.C. §1983;  § 6-5-50; § 34-3-8; § 12-13-16 and § 36-5-18, Code of Alabama 1975.

20.  Benjamin Rice ("Rice") and Ellen Melson ("Melson") are attorneys of the firm Spurrier, Rice and Hall, 3226 Bob Wallace Ave., SW, Huntsville, AL 35805 and citizens of Alabama who brought  Probate Court action (Case No. 49546) against Plaintiff's financial and property interests involved in the ongoing civil lawsuit in Madison County Circuit Court (CV-2004-184 (WEH)) in which their client Mark Harris Homes, L.L.C. ("Harris") is a defendant.

21.  Rice, a partner in the firm with over 30 years legal experience, including criminal defense, is an associated-in-fact participant in the RICO Enterprise along with associate Melson an attorney with over five years experience.  Rice and Melson are sworn to conduct themselves as attorneys: "…according to the best of my learning and ability, and with all good fidelity, as well to the court as to the client; that I will use no falsehood …

9

and that I will support the Constitution of the State of Alabama and of the United States, so long as I continue a citizen thereof, so help me God." §34-3-15, Code of Alabama, 1975

22.  Rice and Melson along with Ragland and Geiger were responsible for creating and initiating a scheme to defraud the Tannehills that involved setting up a sham Probate Court Petition action used as the vehicle for transferring the Tannehills' financial and judgment interests in property involved in Circuit Court litigation to an illegal and worthless bond put up by principal benefactor of the scheme, Jeffrey Enfinger, a silent financial partner (not a party in that state court action) in Mark Harris Homes, L.L.C. at all times relevant to this action.

23.  Jeffrey Enfinger ("Enfinger") is a former and long-time Alabama State Senator, Chairman of the Senate Judiciary Committee and Member of the Alabama Supreme Court's, Alabama Sentencing Commission.  Enfinger has powerful influence amongst the judiciary within the 5th Congressional District so much so that it was stated by Madison County Circuit Court Judge Bruce E. Williams, in open court proceedings in the presence of plaintiff James Tannehill and defendant Benjamin Rice and others, that no judge within Madison County, Alabama could hear a case involving Enfinger, or words to that effect.  See ¶ 87, footnote 18 below.

10

24. Enfinger is not known to be an attorney, but by political position and experience is knowledgeable of judicial administration, the Code of Alabama generally and specifically the Alabama Criminal Code and Procedures. § 12-25-1 et seq., Code of Alabama 1975.

25. Enfinger has for many years been a prominent real estate developer with financial ties to multiple companies and developments in and around Madison and Limestone Counties, Alabama. Enfinger is named in this action in his individual capacity and as President of Heritage Plantation, Inc., an Alabama corporation registered with the Alabama Secretary of State for the exclusive purpose of "real/personal property development". It was in the capacity of President of Heritage Plantation, Inc. that Enfinger executed, proffered, and allowed to be publicly taken and recorded in the Office of the Judge of Probate a one million dollar ($1,000,000.00) "Real Property Bond to Transfer Lien".

### III. DUTIES AND PROSCRIPTIONS APPLICABLE TO THE JUDGE OF PROBATE AND EMPLOYEE
(Honest Services– 18 U.S.C. § 1346) [fn5]

---

[5] Justice Stevens, in his dissent in McNally v. United States, 483 U.S. (1987) (vindicated by Congress' reversal of McNally in amending 18 U.S.C. to Include § 1346), stated the following:"In the public sector, judges, State Governors, chairmen of political parties, state cabinet officers, city alderman, Congressmen, and many other state and federal officials have been convicted of defrauding citizens of their right to honest services of their governmental officials. In most of these cases, the officials have secretly made governmental decisions with the objective of benefiting themselves or promoting their own interests, instead of fulfilling their legal commitment to provide the citizens of the

Statutory Duties and Proscriptions

26. The statutory duties and proscriptions pertaining to Alabama Probate judges generally and to Ragland in particular as to this action include, but are not limited to the following:

a. To Record Notice of Lis Pendens reflecting the commencement of civil proceedings to enforce and notice a plaintiff's colorable interest therein. § 35-4-131, Code of Alabama 1975.

b. Not to participate in the preparation or assist in the preparation of any paper, document or instrument which is to be heard or determined by such judge or which may become a subject of controversy before such judge. § 12-13-16, Code of Alabama 1975.

c. Not, as a judge or employee, to Practice Law – the practice of which is defined in pertinent part as rendering "any professional services or give[s] legal advice". §§ 34-3-8 and 11, Code of Alabama 1975

d. Not to Practice Law without license – an unlicensed person is "prohibited from preparing or drawing or procuring or assisting in the drawing or preparation of …conveyances…and any paper, document or instrument affecting or relating to secular rights, which acts are hereby

---

State or local government with their loyal service and honest government. McNally, 483 U.S. at 362-63."

defined to be an act of practicing law, unless such person, firm or

corporation shall have a proprietary interest in such property."

§ 34-3-6(c), Code of Alabama 1975.

      d.  To take commercial surety bond (such as Ragland himself is

required by statute to obtain and maintain) as a precondition to Release of

land from Lis Pendens upon posting of money bond in double the value of

the property against which Lis Pendens has been filed.  § 35-4-137, Code of

Alabama 1975.

      e.  Upon his "disqualification", to Certify the fact of such

disqualification from acting to the Chief Justice of Alabama Supreme Court

for appointment of special probate judge.  § 12-13-37, Code of Alabama

1975.

<u>Ethical Duties:</u>

    27.  From the time Ragland took the elected office of Judge of Probate

to the filing of this complaint he was sworn to  "support the Constitution of

the United States, and the Constitution of the State of Alabama…" Article

XVI, Section 279, Alabama Constitution.  As a judge he has at all times

relevant to this complaint been subject to the Alabama Canons of Judicial

Ethics and particularly the following:

13

a. Canon 2A. requiring a judge to respect and comply with the law and conduct himself a manner that promotes public confidence in the integrity and impartiality of the judiciary including not allowing personal relationships to influence his judicial conduct or judgment.

b. Canon 3 requiring Ragland to be faithful to the law and be unswayed by partisan interests.

c. Canon 3A(4) requiring in pertinent part that part:

"A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte communications concerning a pending or impending proceeding." [fn6]

d. Canon 3C pertaining to a judge's duty to disclose requires that a judge disqualify himself "in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where…He has a personal bias or

---

[6] See also Camero v. United States , 179 Ct.Cl. 520, 375 F.2d 777 (Ct.Cl.1967), in which the court held an agency decision to be invalid where the attorney representing the agency communicated with the decision maker, advised him to reject the recommendation of a grievance committee, and participated in preparing the final decision. The court reasoned: "[O]ne of the fundamental premises inherent in the concept of an adversary hearing, particularly if it is of the evidentiary type, is that neither adversary be permitted to engage in an ex parte communication concerning the merits of the case with those responsible for the decision. . . . It is difficult to imagine a more serious incursion on fairness than to permit the representative of one of the parties to privately communicate his recommendations to the decision makers. To allow such activity would be to render the hearing virtually meaningless."

prejudice concerning a party, or personal knowledge of disputed evidentiary

facts concerning the proceeding".

Fiduciary Duties

28.  That public officials and specifically judges are fiduciaries with

duty to disclose material information is well settled. A public official's non-

disclosure of material information has been held to satisfy the fraud element.

United States v. Bush, 522 F.2d 641 (7th Cir. 1975), cert. den., 424 U.S.

977, 96 S. Ct. 1484, 47 L. Ed. 2d 748 (1976).  Further, as to the defrauding

of plaintiff's' intangible rights to honest services of judicial officials, the

Supreme Court upheld the conviction of an Illinois judge despite the absence

of proof that anyone suffered loss of tangible property.  In that case the

Court of Appeals for the Seventh Circuit had reaffirmed the broad meaning

of the word "defraud." United States v. Holzer, 816 F.2d 304 (1987).

Writing for the court, Judge Posner explained:

> "Fraud in its elementary common law sense of deceit - and this is one
> of the meanings that fraud bears [483 U.S. 350, 372] in the statute, see
> United States v. Dial, 757 F.2d 163, 168 (7th Cir. 1985) - includes the
> deliberate concealment of material information in a setting of
> fiduciary obligation. A public official is a fiduciary toward the public,
> including, in the case of a judge, the litigants who appear before him,
> and if he deliberately conceals material information from them he is
> guilty of fraud." United States v. Holzer, 816 F.2d 304, 307 (7th Cir.
> 1987)

15

## IV.   BACKGROUND

29.  In January 2004 Plaintiff James Tannehill and his wife brought a civil action in Madison County, Alabama Circuit Court Case No. CV-2004-184 (WEH) against Mark Harris Homes, L.L.C., a company in which defendant (in this action) Enfinger held indirect financial interest through Enfinger-Steele Development, Inc.  The lawsuit sought recovery of Plaintiffs' $46,400.00 earnest money deposit and damages for breach of contract and fraud incident to their home construction agreement with Harris.  Neither Enfinger, Enfinger-Steele Development, Inc. nor Heritage Plantation, Inc. were parties to that lawsuit.

30.  The legal description of the disputed property is Lot 4, Block 1. River Run II of Mt. Carmel by the River (the "Mt Carmel Property"), situated in Madison County, Alabama.

31.  As required by § 35-4-131, Code of Alabama, 1975, notice of *lis pendens* lien was filed with the Madison County Judge of Probate.[fn7]

---

[7] "When any civil action or proceeding shall be brought in any court to enforce any lien upon, right to or interest in, or to recover any land…, the person, corporation or governmental body commencing such action or proceeding or making such application shall file with the judge of probate of each county where the land or any part thereof is situated a notice containing the names of all of the parties to the action or proceeding, or the persons named as those having an interest in the land in the application for an order of condemnation, a description of the real estate and a brief statement of the nature of the lien, writ, application or action sought to be enforced. The judge of probate shall

## V.   **FACTUAL ALLEGATIONS**

Conduct of Enterprise Through a Pattern of Racketeering Activity
18 U.S.C. § 1962(c)

32.  In attempting to free up the Mt. Carmel Property for resale, Rice subsequently moved the Circuit Court on multiple occasions for relief from *lis pendens* based upon alleged hardship and groundless slander of title accusations.

33.  The Court, recognizing the Tannehills' colorable interests in the disputed Property and the plain language of the *lis pendens* statute providing for relief only through the posting of commercial surety bond in double the amount of the property (approximately $1,000,000.00), denied Rice's redundant motions pursuant to §35-4-137.[fn8]

---

immediately file and record the notice in the lis pendens record and note on it and in the record the hour and date of the filing and the place and date of recording."
[8] Release of land from lien upon execution of bond. When any lis pendens in an action or p roceeding to enforce a lien has been filed and recorded in the office of the judge of probate, as prescribed in sections 35-4-131 and 35-4-132, the person owning or claiming the land described in the lis pendens may at any time, before a judgment is entered enforcing the lien, nullify the notice given by such lis pendens by executing a bond with sufficient surety in double the amount of the fair market value of the land described in the lis pendens and as to which the lis pendens is to be nullified, the amount of the bond and the surety or sureties thereon to be approved by the judge of probate. The bond shall be payable to the judge of probate and conditioned to pay any sum of money found to be a lien against such land, up to the fair market value of the said land…The judge of probate of each county in the state of Alabama shall keep in his office as a public record a suitable book, appropriately designated, in which all such bonds shall be recorded and

17

34.  Rice and Melson then knew, beyond any reasonable doubt, they were faced with only two legal alternatives.  One, resolve the Circuit Court lawsuit with the Tannehills so *lis pendens* could be lifted and the Mt. Carmel property closed, or; two, purchase and post the approximately $1,000,000.00 commercial surety bond with the Judge of Probate as surety for Plaintiffs' property and judgment interests pursuant to §35-4-137 Code of Alabama 1975, thereby legally enabling the release the Mt. Carmel Property from *lis pendens*.

35.  Rice and Melson pursued neither legal option.  Instead, with the lawsuit bogged down in the Circuit Court and Enfinger's corporate/financial interests in Harris Homes suffering, the pressure was on Rice and Melson to find a way to circumvent the *lis pendens* and get the unproductive property off Enfinger's books.

36.  Having outworn their welcome with the Circuit Court over the *lis pendens* relief issue and strained the limits of the Alabama Rules of Professional Conduct by repeatedly badgering the Court and inflicting needless costs on plaintiffs with unmeritorious motions, the Court's final denial of the Rice motion should have put the *lis pendens* matter to rest.

---

properly indexed. The judge of probate, for the services required of him, shall receive a fee of $1.00 for approving the said bond and $.15 per 100 words...

37. That, however, was not the end of it. Rice, Melson and Enfinger then took matters into their own hands by forming an associated- in-fact Enterprise within the meaning of 18 U.S.C. § 1961(4) to get around the *lis pendens* and defraud the Tannehills of their financial and judgment interests in the Mt. Carmel Property and the honest services of the Madison County Probate Court.

<u>The Scheme and Artifice to Defraud, 18 U.S.C. 1961</u>

38. The three-pronged scheme involved: one, creating a sham judicial proceeding in the Madison County Probate Court purporting to remove the *lis pendens* under due process; two, fabricating a worthless bond styled "Real Property Bond to Transfer Lien", executed by Enfinger, to which to "transfer" the Tannehills' interest in the Mt. Carmel Property and; three, obtaining the Tannehills' property and judgment interest through theft carried out in the rigged Probate Court proceeding. See §13A-8-1 et seq., Code of Alabama 1975.

39. Relying on Enfinger's powerful influence within the Madison County judiciary, Rice and Melson contacted political crony Probate Judge Ragland and enlisted his and Probate Court Clerk Geiger's ex parte assistance and involvement in the scheme. Their initial involvement was by agreeing to participate in the scheme and assisting in conducting legal

research for prior cases looking for a way around the *lis pendens* surety bond requirements.  When they found no such precedent that, along with the plain language of the statute, signaled to these experienced attorneys and probate court officials the unmistakable fact that that there was no legal way to get around the *lis pendens* statutory surety bonding requirement.  That, however, did not dissuade them.


## Mail, Wire and Honest Services Fraud -18 U.S.C. §§ 1341, 1343, 1346 [fn9]

40.  Failing to find any legal grounds for proceeding, the Enterprise then collaborated in faking up authentic looking process documents, assigned them a Probate Court Case Number, complete with citation to Section 35-4-137, Code of Alabama 1975 thereby lending an aura of procedural legitimacy to the scheme.

41.  The previously unknown in law creations concocted by the Enterprise consisted of a so called "Petition for Bond to Transfer Lien" ("the

---

[9] Sections 1341 and 1343 proscribe the use of the mails or interstate wire as part of a "scheme or artifice to defraud." 18 U.S.C. § 1341. Section 1346 defines "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services." "Public officials inherently owe a fiduciary duty to the public to make governmental decisions in the public's best interest." United States v. deVegter,198 F.3d at 1328 (11th Cir. 1999) When a public official, instead, secretly makes decisions based on his own personal interests, the official defrauds the public of his honest services. See U.S. v. Lopez-Lukis, 102 F.3d at 1169 (11thCir. 1999). "A defendant's breach of a fiduciary duty may be a predicate for a violation of the mail fraud statute where the breach entails the violation of a duty to disclose material information." See United States v. Waymer, 55 F.3d 571, (11th Cir. 1995)

Petition") purporting to transfer the Tannehills' property interests from the

Mt. Carmel Property to a bond instrument styled: "Real Property Bond to

Transfer Lien" ("the Bond") executed by Enfinger as President of Heritage

Plantation, Inc.

42  Rice's own words in subsequent Probate Court filings best

describe how he involved Ragland in abuse of his public trust and misuse of

the Office of the Probate Court in creating and carrying out a sham

proceeding in furtherance of the scheme:

   a. "It is true that counsel sought the assistance of this [probate]
   Court in its preparation of its petition to remove the *lis pendens* lien
   under Section 35-4-137, Code of Alabama 1975." and Rice;

   b. "…saw no other way to obtain the approval of the  Probate Court
   than to ask the Court what type of bond it would approve." and he;

   c. "…also asked the Court and Clerk's office for assistance in
   drafting the Petition…."and;

   d.  Rice admits to having : "…mailed a copy of
   said petition and proposed bond and order to Tannehills' Counsel
   before said  petition and  proposed bond was [sic] even filed in the
   Probate Court Clerk's office."

43. The Certificate of Service filed with the Petition for Bond

to Transfer Lien and Real Property Bond to Transfer Lien, bearing Rice's

signature, Certifies as follows:

   " I HEREBY CERTIFY that a copy of the forgoing has been served
   upon attorney of record, on this the 28[th] day of August 2006, by

<u>depositing same in the United States Mail,</u> postage prepaid, addressed as follows: (emphasis added)

> Jeffrey N. Lucas, Esq.
> PO Box 361606
> Birmingham, AL 35236-1606
>
> Jackson E. Duncan, III, Esq.
> Reynolds, Reynolds, & Duncan, L.L.C.
> P.O. Box 18605
> Huntsville, AL 35804
>
> J. Craig Lewis, Esquire
> Smith, Spriers and Peddy
> 2015 Second Avenue North
> Suite 200
> Birmingham, AL 35203"

44.  Attorney Melson's job was to work out the details of the scheme through her frequent contacts with the Clerk of Probate office enlisting the help of Donna Geiger in legal research and advice.

45.  With Geiger's and Ragland's assistance and direction they prepared the Petition, Bond and other legal process and instruments employed to effect the transfer of *lis pendens* from the Mt. Carmel Property to a purported Heritage Plantation, Inc. property put up as surety on Enfinger/Heritage Plantation Inc.'s  Bond.

46.  In explaining her part in the Bond to Transfer Lien scheme Melson, in sworn Affidavit filed in subsequent Probate Court proceedings, volunteered in part that she:

22

a. "was asked by Ben Rice to file a Petition to remove lis pendens pursuant to Ala. Code §35-4-137 on the property made the subject of this matter."

b. "Being unfamiliar with the process, I contacted the Madison County Probate Clerk's Office to ascertain whether a similar pleading had been filed in the recent past which I could use as a guide."

c. "I spoke on numerous occasions with Donna Geiger, an employee of the Madison County Probate Clerk's Office. "

d. "Ms. Geiger offered me as much help as she could, but was also  unfamiliar with the statute or the process."

e. "I visited the Probate Clerk's Office on or about August 21, 2006 to look for a specific example and to speak with Ms. Geiger.  No specific example of a Petition to Remove Lis Pendens was found."

f. "On or about August 29 and August 30, 2006, I spoke with Ms. Geiger regarding the drafted Petition to Remove Lien pursuant to Ala. Code §35-4-137."

g. "After I spoke with both her and with Probate Judge Tommy Ragland, it was determined that the Petition should be called a Petition to Transfer Lien, rather than a Petition to Remove Lien, and it would be approved as such."

47.  Section 35-4-137 Code of Alabama 1975 plainly makes no

provision for treatment of lis pendens as though it were a Section 35-11-233

mechanics and materialmen lien subject to transfer under an entirely

different statutory article of the code.   Further, the lis pendens statute

contains no provision for removal other than through the posting of

23

commercial surety bond – which the RICO Conspirators and Defendants, as evidenced by their own words (above) Rice and Melson clearly knew.

48.  The term "Petition to Transfer Lien" was a legal fiction coined by Ragland and Geiger and adopted by the other RICO Conspirators to create the false appearance of legitimate judicial process knowing, based upon their experience and research, there was no statutory provision or legal precedent enabling the removal of *lis pendens* through transfer to other property.  Recognizing that the caption "Petition for Bond to <u>Remove</u> Lien" would wave a red flag to those knowledgeable of real property matters, Ragland instructed Melson to change the caption to read: "Petition to <u>Transfer</u> Lien" so as to disguise and conceal the illegal and fraudulent nature of the scheme. (emphasis added above for clarity)  See ¶¶ 46 f. and g. above.

49. Having thus fabricated a transfer of lien action dressed up in the clothes of a legitimate judicial petition the Enterprise then needed something of purported value, i.e., a "Bond" to "transfer" it to.

50.  Again, Melson has explained in some detail how a purported  Real Property "bond" to transfer lien came to be, stating:

> a.  "In addition to my duties of filing a Petition to remove the lis pendens, it was also part of my duties to secure a bond for said removal."

b. "I sought the court's approval to file a real property bond instead of a traditional commercial bond, and…"

c. I "was informed by the court in the previously mentioned conversations [August 29 and August 30, 2006 - See ¶ 46 f. above] that if same were filed, it would be approved."

d. " In the process of obtaining property to secure the bond, Jeff Enfinger volunteered to post property he owned on County Line Road to secure the bond."

e. "A plat of the Enfinger property was obtained and I provided its legal description and location erroneously as being in Madison County, Alabama."

f. "I acted on my interpretation of the statute and the direction received from the Probate Court."

51.  Having thus taken part in the extra-judicial preparation of the Petition and legal documents designed to fix the outcome of a future, albeit sham, judicial proceeding, Ragland and Geiger became  full-fledged, associated-in-fact members of the Enterprise and scheme to defraud the Tannehills, not only of their tangible, financial interests in the Mt. Carmel Property but, of their intangible right to the "honest services" of the Madison County Probate Court and its judicial officials.

52.  On or about September 8, 2006, Rice/Melson re-submitted the Petition and Bond after changing them to read "Petition to Transfer Lien" and "Real Property Bond to Transfer Lien" as instructed by Ragland.  The

Petition was signed by Melson for Rice ("Benjamin Rice/EM") and the Bond signed by Enfinger.

53.  Ragland having allowed himself, Geiger and the integrity of the entire Probate Court to be compromised by ex parte participation in the preparation of sham documents then carried the scheme forward by failing to disqualify himself, concealing his involvement from the Tannehills and their counsel, assigning Case No. 49546 and opening a Court Docket omitting therefrom all reference to prior events as described above by Rice and Melson.

54. Section 12-13-41, Code of Alabama, 1975 requires that Ragland ensure the entry of all dates of issue and return of process and date set for hearing.[fn10]

55. The Madison County Probate Court Docket in Probate Case No.  49546, certified by signature of Ragland and dated July 10, 2007, mailed to attorney Jeffrey Lucas on July 20, 2007 and subsequently transmitted to the Tannehills in Colorado via email, concealed all events occurring prior to the filing of the Petition to Transfer Lien and Bond on

---

[10] §12-13-41 "Duties of probate judges generally. It shall be the duty of the probate judge:...(4) To keep constantly in his office a well-arranged docket, showing the date of the issue and return of all process, the day set for the hearing, the kind of notice ordered, the returns of the sheriff and such other entries as may be necessary to show the true condition of all proceedings pending in the court and all fees accruing in the case and to whom due."

September 8, 2006, including Rice's service of process by U.S. Mail on August 28, 2006.  See attributions to Rice at ¶¶ 42-43 above

56. As agreed to by members of the Enterprise, the petition and bond with captions altered to read: "Transfer" replacing "Remove" as directed by Ragland were signed, filed and immediate "rubber stamped" by Ragland, all on September 8, 2006.

57.  Ragland and/or Geiger then prepared or directed Melson/Rice to prepare and then executed a "Certificate of Transfer of Lien" and "Order" directing that the "Real Property Bond signed by Enfinger as president of Heritage Plantation, Inc. be received by the Clerk, recorded and a copy mailed to the Tannehills:

> "ORDERED that the Real Property Bond tendered by Heritage Plantation, Inc. be received by the Clerk of this Court.  It is further
>
> "ORDERED that a copy of the Certificate of Transfer of Lien be Mailed by the Clerk by registered or certified mail to James Tannehill, II and Robyn Tannehill, the lienors named in the claim of lien, c/o Jeffrey Lucas, Attorney at Law, PO Box 361606, Birmingham, AL 35236-1606.  It is further"
>
> " ORDERED that a copy of the Certificate of Transfer of Lien be recorded in the Office of the Judge of Probate of Madison County, Alabama in accordance with and at the times specified in Section 35-4-137."

58.  With the *lis pendens* then removed the Tannehills' property and

financial interests in the Mt. Carmel Property gone, obtained [fn11] by

Enfinger/Heritage Plantation, Inc. through transfer to the purported Real

Property Bond, the objective of the Enterprise's scheme to defraud the

Tannehills and the public of both the property and the intangible right to the

honest services of the Probate Court was realized and the Mt. Carmel

Property was placed on the resale market as available.[fn12]

Transport of Property etc. in Scheme to Defraud  - 18 U.S.C. § 2314
Theft in the First Degree - §13A-8-3, Code of Alabama 1975

   59.  On or about September 13, 2006 the Tannehills' attorney, Jeffrey

Lucas, received the above documents from the Probate Court in the mail

and, pursuant to Ragland's Order, transmitted them to the Tannehills in

Colorado, through interstate U.S. Mail. It was an artfully crafted and

executed sleight of hand scheme calculated by the Enterprise to fly under the

radar knowing that neither the Tannehills nor their attorney were local and

---

[11] See § 13A-8-1(6), Code of Alabama, 1975, Definitions:  OBTAIN[ING]. "Such term
means: a. In relation to property, to bring about a transfer or purported transfer of a
legally recognized interest in the property, whether to the obtainer or another…"  See
also, § 13A-8-1(10) PROPERTY. "Any money, tangible or intangible personal property,
property (whether real of personal) the location of which can be changed (including
things growing on, affixed to, or found in land and documents, although the rights
represented hereby have no physical location), contract, chose-in-action, interest in a
claim to wealth, credit or any other article or thing of value of any kind."
[12] According to defendant Rice's comments during October 2004 Circuit Court hearing,
the Browns "were the folks who ultimately bought this house."

would be unlikely to question such legitimate looking Probate Court

documents or the underlying surety bond or property.

60. Enfinger's Real Property Bond to Transfer Lien passed off on the

Tannehills and their counsel through the mails represented in part as follows:

> "WHEREAS the undersigned desires to discharge said lis pendens
> against the aforementioned property by filing this 'Real Property
> Bond to Release Land from Lien' as security to transfer the lien as
> provided in Section 35-4-137, Code of Alabama 1975 the following
> property, with a market value in excess of $1,000,000.00, situated in
> Madison County, Alabama, to wit:

>> Lot 3, Cambridge, A resubdivision of Lot 1 of Heritage
>> Plantation, Seventh Addition, as recorded in PlatBook G, Page
>> 45, as same appears of record in Plat Book G at Page 140,
>> Probate Records f Madison County, Alabama."

> " NOW THEREFORE in consideration of the premises, the
> undersigned holds himself firmly bound unto James Tannehill II and
> Robyn Tannehill, the claimants, to the property that is worth more
> than double the amount of the property incumbered [sic] by the lis
> pendens notice, as is required by Section 35-4-137, Code of Alabama
> 1975. The Heritage Plantation Property is surety that can be applied
> to enforce any amount to which Defendant Mark Harris Homes, L.L.C
> may be obligated to pay as a result of the aforemention lawsuit to the
> claimants."

61. On or about September 20, 2006, Plaintiff James Tannehill

contacted the Madison County, Alabama Tax Assessor's Office attempting

to verify location and value of the property described in the above

Enfinger/Heritage Plantation, Inc. Real Property Bond to Transfer Lien.  He

was unhesitatingly informed by the clerk taking his call that these Plat book

alphabetic designations were not those used by Madison County (Ragland's own Probate Office) and the property so designated must to be located in another county, suggesting perhaps Limestone, County, Alabama.

62.  On or about September 20, 2006, plaintiff telephoned the Limestone County, Alabama Tax Assessor's Office from his home in Colorado and was informed that the computer system was down and would remain down until the first part of October, 2006.  However, from what limited information was available to the Tax Assessor's Office clerk it appeared that the property put up by Enfinger on Heritage Plantaion, Inc.'s bond (¶ 60 above) would, when and if brought into existence as a legal entity, be located in Limestone County, Alabama not Madison County as represented.  In order to obtain any further information plaintiff was told that he would have to come to the Limestone County Tax Assessor's Office and meet with the mapper.

63.  During the period approximately October 7 through October 9, 2006 plaintiff traveled via interstate highways from Colorado to Alabama as indicated by the Limestone County Tax Assessors Office would be necessary to personally appear and meet with the mapper.

64.  On or about October 10, 2006 Plaintiff met with limestone

Limestone County, Alabama, Tax Assessor's Office Mapper, Evelyn K. Lambert. After graciously performing a meticulous search of physical and computer records Ms. Lambert produced and provided plaintiff a copy of a map captioned "HERITAGE PLANTATION SEVENTH ADDITION G 33".

65. With reference to the above map, Ms. Lambert advised that the lot designated "103.000" with the number "3" in the lower right corner was the Lot 3 described in paragraph 60 above .

66. Ms. Lambert further advised that Lot 3, along with others, had been created by subdividing a larger lot previously known as Lot 1.

67. At the same meeting on or about October 10, 2006, Ms. Lambert also produced and provided Plaintiff a copy of another Limestone County public record captioned "Assessment Record" which she represented, as pertaining to the larger Lot 1 cited above.

68. The Limestone County, Alabama Assessment Record provided by Ms. Lambert, reflects:

        a. That Lot 1 consisted of "22.840" acres.

        b. The "TOTAL MARKET VALUE: $571,000" to be the total value of Lot 1.

69. In summary, the property proffered on the Tannehills through the Probate Court by Enfinger's/Heritage Plantatation Inc.'s purported bond as surety for their financial and judgment interests in the Mt Carmel property:

     a. Was not situated in Madison County, Alabama.

     b. Was not recorded in Ragland's Madison County, Alabama Probate Office Records.

     c. Did not exist at the time proffered as surety and if and when brought in to existence and placed on the tax rolls would be located in Limestone County, Alabama.

     d. As part of a larger, undivided parcel having a total market value of only approximately $571,000 could not have a market value of $1,000,000.00

70. The Real Property Bond to Transfer Lien, was signed by Enfinger as President, Heritage Plantation, Inc., which according to Alabama Secretary of State records is a corporation whose address is 8624 Memorial Parkway, SW, Huntsville, Alabama 35802 engaged in sole pursuit of Real Estate Development.

71. Neither Enfinger nor Heritage Plantation, Inc. were authorized by law to issue surety bonds required to be approved by judges of any court of

the state of Alabama pursuant to Sections 27-4-1 and 27-4-2, Code of Alabama, 1975.

72.  The Enfinger/Heritage Plantation, Inc. bond was not made payable to the Madison County Judge of Probate, being the only official having statutory authority to receive such bond and recourse to recovery pursuant to Section 35-4-137, Code of Alabama 1975.  Instead it was prepared by Rice/Melson with the assistance of Geiger and at the direction of Ragland conditioned upon nothing but Enfinger' purportedly binding himself, pursuant to Section 35-4-137, to claimants James Tannehill, II and Robyn L. Tannehill – predicated upon totally misrepresented and in fact nonexistent property on an unenforceable, fraudulent bond – which Ragland had no statutory authority to accept and had a duty to refuse to accept.

73.  In addition to the above described predicate acts of mail, wire and honest services fraud, RICO Defendants' scheme, carried out through interstate commerce, violated 18 U.S.C. § 2314, pertaining to the transport of securities (bond) fraudulently converting through transfer the Tannehill's property interests on to a worthless bond

involved constituted yet another of the predicate RICO act defined by

18 U.S.C. § 1961(1)(B).[fn13]

74. RICO Defendants' scheme to defraud not only violated federal

RICO statues but constituted Theft in the First Degree as defined by § 13A-

8-3, Code of Alabama, 1975.[fn14]

75. On or about October 11, 2006, Ragland executed and

caused to be sent separately to each of the following, via U.S. Mail, an

Order vacating his September 8, 2006 actions which continued to

conceal from the Tannehills and counsel the material fact of his and

clerk Geiger's illegal involvement in the preparation and pre-approval

---

[13] 18 U.S.C. § 2314 provides: "Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more; or Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud... Shall be fined under this title or imprisoned not more than ten years, or both."
[14] Section 13A-8-3(c)(1) Theft of property in the first degree. "The theft of property which involves all of the following constitutes theft of property in the first degree:a. The theft is a common plan or scheme by one or more persons; and b. The object of the common plan or scheme is to sell or transfer the property to another person or business that buys the property with knowledge or reasonable belief that the property is stolen; and c. The aggregate value of the property stolen is at least one thousand dollars ($1,000) within a 180-day period."

of Petition for Bond to Transfer Lien and Real Property Bond to

Transfer Lien:

> Jeffrey N. Lucas
> PO Box 361606
> Birmingham, AL 35236-1606
>
> J. Craig Lewis, Esq.
> Smith, Spires & Peddy
> 2015 Second Avenue North
> Suite 200
> Birmingham, AL  35203
>
> Jackson Duncan, III Esq.
> Reynolds, Reynolds, Duncan, L.L.C.
> P.O. Box 18605
> Huntsville, AL 35804
>
> Benjamin R.  Rice
> Spurrier, Rice & Hall
> 3226 Bob Wallace Ave. SW
> Huntsville, AL 35805

76.  On or about November 7, 2006, Ragland executed and

caused to be sent separately to each of the following, via U.S. Mail, an

Order setting his Hearing on the Tannehills' Petition to Alter/Amend

Judgment/Order in which they sought only compensation for their

actual costs of reversing the illegal Petition for Bond to Transfer Lien

and Real Property Bond to Transfer Lien.   Ragland's Order continued

the charade of judicial impartiality and concealed from the Tannehills

and their attorney the material fact of Ragland's and Geiger's

35

participation in the scheme to defraud through preparation and pre-

approval of Petition for Bond to Transfer Lien and Real Property

Bond to Transfer Lien.  Ragland's Order was sent through the U.S.

Mail to the following and retransmitted from Alabama to the

Tannehills by attorney Lucas:

> Jeffrey N. Lucas
> PO Box 361606
> Birmingham, AL 35236-1606
>
> J. Craig Lewis, Esq.
> Smith, Spires & Peddy
> 2015 Second Avenue North
> Suite 200
> Birmingham, AL  35203
>
> Jackson Duncan, III Esq.
> Reynolds, Reynolds, Duncan, L.L.C.
> P.O. Box 18605
> Huntsville, AL 35804
>
> Benjamin R.  Rice
> Spurrier, Rice & Hall
> 3226 Bob Wallace Ave. SW
> Huntsville, AL 35805

77.  Ragland would recuse only after his ex parte involvement

was exposed by Rice and Melson who escaped the assessment of costs

when implicating Ragland and Geiger involvement in the scheme.

Ragland continued, however, to interfere [fn15] in the proceedings (albeit

sham as they were) and run interference for the Enterprise by refusing

for many months to "certify" the fact of his disqualification to the

Chief Justice of the Alabama Supreme Court pursuant to Section 12-

13-37, Code of Alabama 1975.

78. After months of delay during which the court is said to have

lost jurisdiction by operation of law, Ragland eventually managed to

get a colleague in the Circuit Court to circumvent the provisions of

Section 12-13-37, requiring him to "certify the fact of" his

"disqualification to the Chief Justice of the Alabama Supreme

Court…." by preparing and sending, through U.S. Mail on or about

April 25, 2007, an innocuous letter to an administrator at the

Administrative Office of the Courts addressed as follows:

> Ms. Callie T. Dietz
> Administrative Office of Courts
> 300 Dexter Avenue
> Montgomery, AL  36104-3741

---

[15] See Section 13A-10-130(a)(3) Interfering with judicial proceedings.(a) A person commits the crime of interfering with judicial proceedings if…(3) As an attorney, clerk or other officer of the court, he knowingly fails to perform or violates a duty of his office, or knowingly disobeys a lawful directive or order of a court…(b) Interfering with judicial proceedings is a Class B misdemeanor.

79.  Said letter contained nothing from Ragland, much less his certification of the fact of his disqualification, and in fact was phrased in such a vague way as to cover-up the material fact of Ragland's disqualification due to his violation of Section 12-13-16, a misdemeanor crime with serious career implications for an elected judge and politician.

## VI.   <u>ALABAMA STATUTORY "CITIZEN" BIAS</u>

80.  Sections 6-5-50 and 12-13-16, Code of Alabama 1975 pertaining to the initiation and recovery of civil penalties for the statutory violations provide as follows:

a.  § 6-5-50 Section – Actions for Statutory Penalties, Who

may commence:

> "When a penalty is imposed by a statute which does not provide a mode for the recovery, <u>any citizen</u> may commence an action for the same on behalf of himself and the county in which the penalty is incurred." (emphasis added)

b.  § 12-13-16 preparation, etc., by probate judge,

register, etc., of papers, documents, etc., to be heard, etc., by such

judge or register:

38

"No probate judge or his clerk or any register shall prepare or assist in the preparation of any paper, document or instrument which is to be heard or determined by such judge or register or which may become a subject of controversy before such judge or register, but such judge or his clerk may prepare or assist in the preparation of acknowledgments and proof of conveyances, affidavits, oath, affirmations or any instrument which by law is required to be prepared by such judge.

Any probate judge or his clerk or any register who shall prepare or assist in the preparation of any paper, document or instrument in violation of this section shall be guilty of a misdemeanor and shall forfeit the sum of $300.00, one third to the use of the state and two thirds to the use of any person who may institute a civil action for the same; provided further, that any citizen of the county in which the violation may occur may institute a civil action, in his own name, for this penalty in the circuit court of said county." (emphasis added)

81.  Plaintiff and Mrs. Tannehill, being citizens of Colorado, cannot at one in the same time be citizens of the State of Alabama or any county thereof.

82. Section 6-5-50 precludes the Tannehills from accessing Alabama state courts for redress of their grievances against the very judicial officials and officers of the court  (Ragland, Geiger, Rice and Melson) who participated in and orchestrated much of the scheme to defraud them of their property and judgment interest in Alabama real

property under color of official right in violation of various statutes

none of which provide an alternate mode for damaged persons'

recovery [fn16]

83. Section 12-13-16, while providing for a civil action

mode of recovery with one hand then takes it away from out-of-state

plaintiffs with the other hand, by limiting that mode of recovery to

"citizens of the county in which the violation may occur".  Such

provision on its face preemptively bars a non-citizen plaintiff's access

to and redress in Alabama state courts.

84.  The insidious product of such biased statutory

provisions was realized in the instant case in which the RICO

Enterprise seized on this statutory aberration as a license to defraud

---

[16] See:

    a. Section 34-3-11 Judges not to practice law. "Any judge of a court of record in this state who practices law in any of the courts of this state, or of the United States, or who renders any professional services or gives any legal advice, must on conviction be fined in such sum as the jury or court trying the same may assess, not less than $100.00 nor more than $1,000.00"

    b. Section 34-3-8 Clerk or employee practicing before court: "Any person who practices law in any court in which he is clerk, deputy clerk or regularly employed to perform any of the ministerial duties thereof must, on conviction, be fined not less than $100.00."

    c. Section 34-3-1 Unlawful practice of law: "If any person shall, without having become duly licensed to practice, or whose license to practice shall have expired either by disbarment, failure to pay his license fee within 30 days after the day it becomes due, or otherwise, practice or assume to act or hold himself out to the public as a person qualified to practice or carry on the calling of a lawyer, he shall be guilty of a misdemeanor and fined not to exceed $500.00, or be imprisoned for a period not to exceed six months, or both."

    d. Section 34-3-7 Penalty for practicing law without license or conspiring, aiding or abetting in violation: "Any person, firm or corporation who is not a regularly licensed attorney who does an act defined in this article to be an act of practicing law is guilty of a misdemeanor and, on conviction, must be punished as provided by law. Any person, firm or corporation who conspires with, aids and abets another person, firm or corporation in the commission of such misdemeanor must, on conviction, be punished as provided by law."

these out-of-state citizens of their property interests and the honest services of the Probate Court knowing they were sheltered from civil suit by the exclusionary provisions of §6-5-50 and § 12-13-16.

## VII.   DAMAGES SUFFERED BY THE TANNEHILLS

85.  The Tannehills have, through these RICO Defendants' scheme to defraud and theft, been defrauded and victimized of not only their financial and judgment interests in the Mt. Carmel Property but of the honest services of the Madison County Probate Court, the Judge of Probate and staff.  While some of these ongoing damages and legal costs are quantifiable in dollars, the emotional distress and physical demands knowingly and intentionally inflicted on the Tannehills by these RICO Defendants both in the past and the future as they seek to vindicating their claims are less easily defined and best left to jury determination.

86.  Plaintiff's damages and costs far exceed $75,000.00. The amount of the fraudulent bond tendered by Enfinger represented the Market Value of the Mt. Carmel Property at the time it was transferred (in fact stolen) to the Enfinger/Heritage Plantation Real Property Bond to be $400,000.00.  The bond further promised to pay

the Tannehills up to that amount which is the base amount which the

Tannehills are due to recover in damages and costs in this action

(before application of RICO triple damages multiplier).[fn17]

87.   The Tannehills' damages continue to accrue as the result of

this ongoing scheme to defraud and theft that even when exposed

continued as though it were a given fact of life in Madison County,

Alabama that the judiciary curry favor to politically powerful

Enfinger.[fn18]  So brazen is the Probate Court judiciary in its "back

door" dealings, that it did not just look the other way it actively joined

in the scheme and act of passing off Enfinger's worthless

$1,000,000.00 Bond. Once intercepted Ragland continued to conceal

the material and disqualifying fact of the Court's involvement in the

---

[17] See Section 13A-8-1(14), Code of Alabama 1975 provides in pertinent part as to the means of determining the value of property: "Whether or not they have been issued or delivered, certain written instruments, not including those having a readily ascertainable market value such as some public and corporate bonds and securities shall be evaluated as follows…b. The value of any other instrument that creates, releases, discharges, or otherwise affects any valuable legal right, privilege, or obligation shall be deemed the greatest amount of economic loss which the owner of the instrument might reasonably suffer by virtue of the loss of the instrument…."

[18]  Or at the risk of ones judicial career stay out of Enfinger's way.  According to Judge Bruce E. Williams, there isn't a judge in Madison County that can hear a case involving Enfinger, whereupon he recused.  True to his words  the entire 23rd Judicial Circuit Court was then recused by presiding Circuit Judge Bell. Replacement Judge William E. Hereford would subsequently remark about the high number of recusals in the 23rd Circuit stating: "So, yeah, I can understand a party having curiosity as to why, in a circuit this size where there are a number of judges, but it's amazing how many cases I have here.  And I know other judges who do.  There are a lot of recusals in this county, a lot of them.  And the ones I've been involved in, this is the first time anybody has had any question about a recusal.  And it's, you know, an interesting proposition." See Madison County Circuit Court, Transcript of Hearing, October 4, 2007.  On June 18, 2008, Judge William E. Hereford, on his own motion and with hearing on pending motions scheduled for June 25, 2008, himself recused from that case.

scheme.  Such RICO Enterprise exists and unless dealt with in this Federal District Court forum will continue to operate in this corrupt fashion, serving special political/financial interests rather than the people who come to, or in the Tannehills' case are brought in to the Probate Court to defend their property interests expecting and deserving its honest services.

## COUNT ONE
## RACKETEER INFLUENCED AND CORRUPT
## ORGANIZATIONS ACT

**CONDUCTING THE AFFAIRS OF THE ENTERPRISE
THROUGH A PATTERN OF RACKETEERING ACTIVITY
18 U.S.C. §§ 1962(c) and 1964(c)**
(All RICO Defendants)

88.  Plaintiff repeats and incorporates by reference each and every allegation in paragraphs 1 – 87 above as if set forth fully herein.

89.  From on or about August 2006, continuing through the filing of this Complaint, all RICO Defendants were "persons" within the meaning of 18 U.S.C. § 1961(3).

90. From on or about August 2006, continuing through the filing of this Complaint, RICO Defendants formed an associated-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

43

91. From on or about August 2006, continuing through the filing of this Complaint, RICO Defendants engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. §§ 1961(1) 1961(5) which affect interstate or foreign commerce.

92.  From on or about August 2006, continuing through the filing of this Complaint, RICO Defendants and each of them individually, together with others acting in concert, were each associated-in-fact members of the Enterprise who, knowingly and willingly participated in the conduct of a pattern of racketeering activity consisting of a number of acts of racketeering activity within and without of the state of Alabama and which affect interstate commerce.

93.  From on or about August 2006, continuing through the filing of this Complaint, RICO Defendants and each of them individually, together with others acting in concert, were each associated-in-fact members of the Enterprise whose purpose was to defraud the Tannehills of their property and judgment interest in the Mt. Carmel Property including the honest services of the institution and judicial officials of the Madison County Probate Court.

94. The pattern of racketeering activity described herein and as

44

defined by 18 U.S. C. § 1961 presents a picture of endemic and

accepted extra-judicial deal making amongst the judiciary and officers

of the court to rig the outcome of proceedings posing a distinct threat

of continuing criminal activity. These predicate racketeering activities

include multiple repeated acts of:

      a.  Mail Fraud (18 U.S.C. § 1341):  On or about the dates

indicated herein, the RICO Defendants and their agents acting on their

behalf, aided and abetted by each other, and the remaining defendants,

used the United States mail in furtherance of a scheme to defraud the

Tannehills of their property and judgment interests in the Mt Carmel

Property and the honest services of the Madison County Probate Court

and its staff and facilities in violation of 18 U.S.C. §§ 1341 and 1346,

as described in this Complaint.

      b.  Wire Fraud (18 U.S.C. § 1343):  On or about the dates

indicated herein, the RICO Defendants and their employees and/or

agents acting on their behalf, aided and abetted by each other, and the

remaining defendants, used or caused to be used interstate wires in

furtherance of a scheme to defraud the Tannehills of their property

and judgment interests in the Mt Carmel Property and the honest

services of the Madison County Probate Court and its staff and

facilities in violation of 18 U.S.C. §§ 1343 and 1346, as described in this Complaint.

      c.  <u>Honest Services Fraud</u> (18 U.S.C. § 1346):  On or about the dates indicated herein, the RICO Defendants and their employees and/or agents acting on their behalf, aided and abetted by each other, and the remaining defendants, used or caused to be used the institution of the Madison County Probate Court, its judicial staff and facilities, in furtherance of a scheme to defraud the Tannehills of their property and judgment interests in the Mt Carmel Property in violation of 18 U.S.C. §1346, as described in this Complaint.

      d.  <u>Interstate Commerce Fraud</u> (18 U.S.C. § 2314):  On Or about the dates indicated herein, the RICO Defendants and their employees and/or agents acting on their behalf, aided and abetted by each other, and the remaining defendants, used or caused to be carried out in interstate commerce:

      (1) The transmission and/or transferred of a Security styled Real Property Bond to Transfer Lien in the value of more than $5,000, knowing same to have been converted by fraud, in violation of 18 U.S.C. 2314.

      (2) The transmission and/or transferred of a

Security styled Real Property Bond to Transfer Lien in the value of

more than $5,000, knowing same to have been taken by fraud, in

violation of 18 U.S.C. 2314.

(3) The inducement of plaintiff's travel in or

transportation in interstate commerce in the execution or concealment

of a scheme or artifice to defraud the Tannehills of property having a

value of $5,000 or more in violation of 18 U.S.C. § 2314.

(4)  The inducement of plaintiff's travel in or

transportation in interstate commerce in the execution or concealment

of a scheme for obtaining the property of the Tannehills of property

having a value of $5,000 or more in violation of 18 U.S.C. § 2314.

95.  Plaintiff James Tannehill and his wife Robyn Tannehilll

have been victimized and injured in their property and business as a

direct and proximate result of the RICO Defendants' violations of 18

U.S.C. § 1962 including injury by reason of the predicate acts

constituting the pattern of racketeering activity.

96.  Pursuant to 18 U.S.C. § 1964(c), plaintiff is entitled to

recover treble its general and special compensatory damages, plus

interest, costs and attorneys fees, incurred by reason of defendants'

RICO violations.

## COUNT TWO
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

**CONSPIRACY TO CONDUCT THE AFFAIRS OF THE ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY IN VIOLATION OF 18 U.S.C. 1962(c)**
**18 U.S.C. §§ 1962(d) and 1964(c)**
(All RICO Defendants)

97. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 – 96 above as if fully set forth herein.

98. From on or about August 2006, and continuing through the time of filing this Complaint, all RICO Defendants, being associated-in-fact members of the Enterprise, did unlawfully, knowingly and intentionally conspire, combine, confederate and agree together to conduct the affairs of the Enterprise, which activities affected interstate commerce, through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

99.  Each defendant knew and agreed that at least two acts of racketeering activity would be committed by one or more members of the conspiracy in furtherance of the Enterprise.

100.  It was part of the conspiracy that the defendants and their co-conspirators would commit numerous acts of racketeering activity

in the conduct of the affairs of the Enterprise as set forth above and

herein including but not limited to:

     a.  Mail Fraud, 18 U.S.C. § 1341;

     b.  Wire Fraud, 18 U.S.C. § 1343;

     c.  Honest Services Fraud,  § 18 U.S.C. § 1346;

     d.  Interstate Commerce Fraud - 18 U.S.C. § 2314.

101.  In furtherance of this unlawful conspiracy, and to effect its

objectives, RICO Defendants committed numerous overt acts,

including but not limited to those set forth above, yet to be discovered.

102.  Plaintiff James Tannehill and his wife Robyn Tannehill

have been victimized and injured in their property and business as a

direct and proximate result of the RICO Defendants' violations of 18

U.S.C. § 1962 including injury by reason of the predicate acts

constituting the pattern of racketeering activity.

103.  As a result of the conspiracy between and among all of

the RICO Defendants to violate 18 U.S.C. § 1962, the Tannehills have

suffered substantial costs and damages, in an amount to be proved at

trial.

104.  Pursuant to 18 U.S.C. § 1964(c), plaintiff is entitled to

recover treble its general and special compensatory damages, plus

interest, costs and attorneys fees, incurred by reason of defendants' RICO violations.

### COUNT  THREE
### BREACH OF FIDUCIARY DUTY
(Ragland and Geiger)

105.  Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 – 104 above as if fully set forth herein.

106.  "Public officials inherently owe a fiduciary duty to the public to make governmental decisions in the public's best interest." United States v. deVegter,198 F.3d at 1328 (11th Cir. 1999) When a public official, instead, secretly makes decisions based on his own personal interests, the official defrauds the public of his honest services. See U.S. v. Lopez-Lukis, 102 F.3d at 1169 (11thCir. 1999). "A defendant's breach of a fiduciary duty may be a predicate for a violation of the mail fraud statute where the breach entails the violation of a duty to disclose material information." See United States v. Waymer, 55 F.3d 571, (11th Cir. 1995)

107.  As judicial officials, Ragland's and Geiger's actions were subject to certain constitutional, statutory and ethical proscriptions the

violation of which constitute breach of their fiduciary duties.  Such violations included but were not limited to those set forth in paragraphs 26 – 28 herein.

108.  The scheme to defraud the Tannehills described herein could not have been carried out but for Ragland's and Geiger's eagerness to shirk and violate their statutory, ethical and fiduciary duties pandering to and ingratiating themselves with Enfinger and other RICO Defendants by:

a.  Participating in ex Parte communications with other Defendants by assisting in, advising and guiding the preparation of process documents to be heard by the Judge of Probate in pre-approved, sham proceedings in violation of the Canons of Judicial Ethics and Section 12-13-16, Code of Alabama 1975.

b.  The failure to disclose the material fact of their ex parte communications with other defendants and pre-judicial agreement to grant the Petition to Transfer Lien and approve Enfinger's Real Property Bond.

c.  Failure to disclose on the Court Docket the material fact of the court's pre-judicial/extra-judicial involvement in advising and assisting in the preparation of process documents, the dates of

service of process and absence of return of same.  Section 12-13-16,
Code of Alabama 1975.

       d.  Ragland's failure to timely and completely disclose
and communicate the material facts concerning his disqualification to
the Chief Justice of the Alabama Supreme Court.  Section 12-13-37,
Code of  Alabama 1975.

       e.  Engaging in the unlicensed practice of law in
Violation of Section 34-3-6 Code of Alabama 1975.

       f.  Engaging in the practice of law as a judge and court
employee in violation of Sections 34-3-8 and 34-3-11, Code of
Alabama 1975.

       g.  Interfering in court proceedings by participating in the
above illegal acts and then failing to disqualify himself from such
proceedings, acting in same and thereafter while concealing the
material fact of Ragland's and Geiger's involvement therein in
violation of Sections 13A-10-130 and 12-13-37, Code of Alabama
1975.

       h.  Failing to comply with Section 35-4-137, Code of

Alabama 1975 by taking a worthless bond from defendants who were not licensed to serve as surety, on then non-existent property known not to be within Madison County Probate jurisdiction.

109.  Ragland and Geiger as officers of the Probate Court, through their actions and omissions violated of their fiduciary duty to the Tannehills by secretly making adverse extra-judicial decisions based on their personal interests and those of the other defendants named herein thereby breaching their fiduciary duty to the Tannehills.

110.  Plaintiff James Tannehill and his wife Robyn Tannehilll have been victimized and injured in their property and business as a direct and proximate result of Ragland's and Geiger's breach of fiduciary duty.

111.  As a result of the breach of fiduciary duty, the Tannehills have suffered substantial costs and damages, in an amount to be proved at trial.

**COUNT FOUR**
**FRAUD**
(All RICO Defendants)

112.  Plaintiff repeats and incorporates by reference each and every allegation in paragraphs 1 – 111 above as if set forth fully herein.

113. From on or about August 2006, the RICO Defendants planned and carried out, a scheme to fraudulently obtain the Tannehills' property and judgment interests in the Mt. Carmel Property, as protected by lis pendens lien, by transferring their lien interest in that property to a worthless, $1,000,000.00 Real Property Bond executed by Enfinger/Heritage Plantation, Inc as surety.

114. On or about September 8, 2006 the scheme was realized when the Tannehills' interests in the Mt Carmel Property was fraudulently obtained when Ragland as Madison County Judge of Probate issued a "Certificate of Transfer of Lien" thereby transferring their interest to the worthless Enfinger/Heritage Plantation, Inc. Real Property Bond.

115. On or about September 8, 2006 the Enfinger/Heritage Plantation, Inc. Real Property Bond was taken and recorded by the Madison County, Alabama Judge of Probate.

116. The Code of Alabama 1975:

    a.   Section 13A-8-(c)(1) defines theft in the first degree to be:

       "The theft of property which involves all of the following constitutes theft of property in the first degree: a. The theft is a common plan or scheme by one or more persons; and b. The object of the common plan or scheme is to sell or transfer the

property to another person or business that buys the property
with knowledge or reasonable belief that the property is stolen;
and c. The aggregate value of the property stolen is at least one
thousand dollars ($1,000) within a 180-day period."

b.  Section 13A-8-1(6)(a) defines "obtains":

"In relation to property, to bring about a transfer or purported
transfer of a legally recognized interest in the property, whether
to the obtainer or another…"

c.  Section 13A-8-1(7) defines "obtains or exerts control or

obtains or exerts unauthorized control" over property to

include:

"but is not necessarily limited to the taking, carrying away, or
the sale, conveyance, or transfer of title to, or interest in, or
possession of, property, and includes but is not necessarily
limited to conduct heretofore defined or known as common law
larceny by trespassory taking, common law larceny by trick,
larceny by conversion, embezzlement, extortion, or obtaining
property by false pretenses."

d.  Section 13A-8-1(10) defines "property" to be:

"Any money, tangible or intangible personal property,
property (whether real or personal) the location of which can
be changed (including things growing on, affixed to, or found
in land and documents, although the rights represented hereby
have no physical location), contract right, chose-in-action,
interest in a claim to wealth, credit, or any other article or thing
of value of any kind."

e.  Section 13A-8-1(14) provides in pertinent part as to the means of
determining the value of property: "Whether or not they have been
issued or delivered, certain written instruments, not including those
having a readily ascertainable market value such as some public and
corporate bonds and securities shall be evaluated as follows…b. The
value of any other instrument that creates, releases, discharges, or
otherwise affects any valuable legal right, privilege, or obligation shall

55

be deemed the greatest amount of economic loss which the owner of
the instrument might reasonably suffer by virtue of the loss of the
instrument…."

117.  Defendants obtained through a common plan designed to

fraudulent transfer to another party (said by Rice to be Daniel and

Laurie Brown) who knew (by and through their attorney Jackson

Duncan) their property interest to have been obtained (stolen from the

Tannehills) by illegal transfer to a purported Real Property Bond

issued by Enfinger/Heritage Plantation, Inc.  The Tannehills' property

and judgment interest in the Mt. Carmel Property had a value in

excess of $1,000.00.

118.  As the direct and proximate result of defendants' fraud

plaintiff and Mrs. Tannehill have been damaged through the loss of

property valued in excess of $1,000.00.

119.  Pursuant to Section 13A-8-1(14), the amount of the

fraudulent bond tendered by Enfinger represented the Market Value of

the Mt. Carmel Property at the time it was transferred (in fact stolen)

to the Enfinger/Heritage Plantation Real Property Bond to be

$400,000.00.  The bond further promised to pay the Tannehills up to

that amount which is the base amount which they are due to recover in

56

damages for fraud by theft (before application of RICO triple damages multiplier).

## COUNT FIVE
## WANTONNESS
(All RICO Defendants)

120.  Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 - 119 above as if fully set forth herein.

121.  Wantonness has been defined by the Alabama Supreme Court as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  Alfa Mut. Ins. V. Roush, 723 So. 2d 1250, 1256 (Ala. 1998). See also Section 6-11-20, Code of Alabama 1975 as "conduct which is carried on with a reckless or conscious disregard for the rights or safety of others."

122.  In matters and proceedings before the courts of Alabama plaintiff and Mrs. Tannehill have Constitutional rights to be heard in a fair and impartial forum and enjoy such due process and protections as afforded by law.

123.  The actions and omissions of Ragland and Geiger as judicial officers and Rice and Melson as officers of the court, all sworn to support the Constitutions of Alabama and the United States violated the following federal statutes in wanton disregard of plaintiff's and Mrs. Tannehill's rights:

    a.  Mail Fraud, 18 U.S.C. § 1341;

    b.  Wire Fraud, 18 U.S.C. § 1343;

    c.  Honest Services Fraud,  § 18 U.S.C. § 1346;

    d. Interstate Commerce Fraud - 18 U.S.C. § 2314.

124.  With respect to public officials, Ragland and Geiger, who might be expected to seek shelter in official immunity for their tortious, extra-judicial acts, it is clear that they undertook the above and below proscribed acts willingly, in bad faith, maliciously, and beyond their authority.  See Ex parte Cranman 792 So. 2d at 405 (2000)

125.  The actions and omissions of Ragland and Geiger as judicial officers and Rice and Melson as officers of the court, all sworn to support the Constitutions of Alabama and the United States violated the following Alabama statutes in wanton disregard of

plaintiff's and Mrs. Tannehill's rights to be afforded due process and enjoy the protection and application of state laws in an impartial state court tribunal:

a. Ex parte communication and assisting in the preparation of process documents to be heard by the Probate Court in violation of Section 12-13-16 Code of Alabama 1975.

b. Followed by Ragland's failure to disqualify himself from acting in proceedings the process documents in which he had participated in preparing and pre-approved. Section 12-13-37 Code of Alabama 1975.

c. Providing legal advice and assistance constituting the unlicensed practice of law.

d. Practicing law while serving as judge and court employee. Sections 34-3-8 and 34-3-11, Code of Alabama 1975.

e. Ragland's illegal transfer of lis pendens lien not subject to transfer. Section 35-4-137, Code of Alabama 1975.

f. Taking bond from unauthorized/unlicensed surety on purported property neither situated in Madison County, Alabama nor recorded in Ragland's own Probate Court. Section 35-4-137, Code of Alabama 1975.

126. After having tried on multiple occasions to obtain the removal of lis pendens lien from the Mt. Carmel Property and been denied in the Circuit Court each time, Rice, Melson and Enfinger sought and employed illegal means to circumvent the substantial cash bonding requirements of the lis pendens statute.

127. According to Rice and Melson themselves, neither they nor their associated-in-fact conspirators, Ragland and Geiger, could find any legal precedent short of posting a commercial surety bond in double the amount of the Mt. Carmel Property which, by Enfinger's own reckoning to be a bond of approximately $800,000.00. ($400,000.00 x 2)

128. Knowing of: the statutory requirements of Section 35-4-137; the Circuit Court's prior denial of relief; the absence of legal precedent providing other legal means of avoiding the $800,000.00 bond and; the probable resulting loss to the Tannehills if the lis pendens lien were removed and the property obtained by others, the these defendants proceeded with reckless or conscious disregard for their rights.

129. As the direct and proximate result of the actions and omissions of the RICO Defendants in conscious disregard of the rights

of the Tannehills their property and judgment interests in the Mt.

Carmel property were transferred to a worthless, unenforceable Real

Property Bond proffered by Enfinger as CEO of Heritage Plantaton,

Inc. and the Mt. Carmel Property has been obtained by others.

130.   As a direct and proximate result of defendants'

wanton violation of federal and state law and their rights the

Tannehills have suffered substantial damages, in an amount to be

proved at trial.

131.  Pursuant to Section 6-11-20 Code of Alabama 1975,

plaintiff is entitled to recover punitive damages and costs incurred by

reason of defendants' wantonness.

132.  The above described acts and omissions on the part of

these knowledgeable, experienced, legal and legislative professionals

individually and collectively constitute wantonness or wanton

behavior which was the proximate cause of plaintiff's damages.

133.  These tortious acts and omissions done with wanton

disregard of the Tannehills' rights cannot be dismissed as negligence

which is "characterized as an inattention, thoughtlessness, or

heedlessness, a lack of due care; whereas wantonness is characterized

61

as an act which cannot exist without purpose or design, a conscious or intentional act" Lynn Strickland, 510 so. 2d at 145.

**COUNT SIX**
**FRAUDULLENT MISREPRESENTATION**
(All RICO Defendants.)

134.  Plaintiff repeats and incorporates by reference each and every allegation in paragraphs 1 – 133 above as if set forth fully herein.

135.  On or about August 2006 Rice and Melson with the assistance of Ragland and Geiger collaborated in the ex parte preparation of legal process documents styled "Petition to Transfer Lien" and "Real Property Bond to Transfer Lien".

136.  Said Petition to Transfer Lien, signed by Melson for Rice as accompanied by Enfinger/Heritage Plantation, Inc's Real Property Bond to Transfer Lien fraudulently misrepresented that:

      a.      The Transfer and Bond actions were taken pursuant to and in conformance with Section 35-4-137. Code of Alabama 1975 when in fact they met none of the requirements of that Code Section and were fraudulent/illegal in that:

            (1)  Section 35-4-137 makes no

62

provision for the "Transfer" of lis pendens lien;

(2)  neither Enfinger nor Heritage

Plantation, Inc. were authorized surety insurers;

(3)  Enfinger's/Heritage Plantation,

Inc.'s  Real Property Bond to Transfer Lien was not made payable to

the Judge of Probate rendering it further unenforceable by the Court.

b.        Further, the property put up as surety by

Enfinger/Heritage Plantation, Inc. was non-existent in law and fact or

as represented to be in that:

(1)  The property was not situated or

recorded in Madison County.

(2)  The property if ever brought into

being as a small part of a larger subdivided parcel would be located in

Limestone County outsider the jurisdiction of the Madison County

Probate Court.

(3)  The property if ever brought into

being as a small part of a larger subdivided parcel (having a total

value of less than $600,000) could not have a value of $1,000,000) as

represented.

137.  On or about September 8, 2006 Rice and Melson filed or caused to be filed in the Madison County Probate Court their Petition to Transfer Lien and Enfinger's/Heritage Plantation, Inc.'s Real Property Bond containing the above fraudulent misrepresentations.

138. On or about September 8, 2006 Ragland issued Probate Court Orders accepting the above Real Property Bond and thereupon issued a Certificate of Transfer of Lien adding to the chain of misrepresentations.

139.  On or about September 8, 2006 Ragland issued Probate Court Orders directing the Clerk of the Court to mail above Certificate of Transfer of Lien to the Tannehills through their attorney and to record same in Madison County Probate Office records.

140.  Copies of the Certificate of Transfer of Lien, the Petition to Transfer Lien and Real Property Bond to Transfer Lien was received by the Tannehills' attorney, Jeffrey Lucas, on  or about September 13, 2006.  He accepted them as legitimate and in reliance thereon forwarded them to the Tannehills as directed by the Court's Order.

141.  Upon receipt of the above documents from Lucas, Plaintiff in reliance on the authenticity and legitimacy of the Petition

64

to Transfer Lien, Real Property Bond to Transfer Lien and Certificate

of Transfer of Lien made inquiries with Madison County and

Limestone County, Alabama authorities to verify the value of

Enfinger's/Heritage Plantation, Inc.'s surety property.

142.  In further reliance upon the above documents and in order

to locate and verify the value of Enfinger's/Heritage Plantation, Inc.'s

surety property plaintiff traveled from Colorado to Alabama where

through inquires with he discovered the irregularities identified in ¶¶

61-72, above.

143.  The full extent of the fraudulent representations contained

in the above process documents was only revealed after further

research and consultation with plaintiff's attorney.

144.  Plaintiff and Mrs. Tannehill were damaged as the direct

and proximate result of defendants' fraudulent misrepresentations.

## COUNT SEVEN
## FRAUDULLENT SUPPRESSION
(Ragland, Rice, Melson)

145.  Plaintiff repeats and incorporates by reference each and

every allegation in paragraphs 1 – 144 above as if set forth fully

herein.

146. The acts and omissions involving the ex parte communications and extra-judicial conspiracy to defraud the Tannehills of their property and judgment interests in the Mt. Carmel Property and the honest services of the Madison County Probate Court could only have been carried out through defendants' fraudulent suppression of the following material facts:

a.  Rice's and Melson's preparation and proffer on the Court and the Tannehills, through their attorney, of sham process documents fraudulently suppressing the material fact that they were prepared with the ex parte assistance of Ragland and Geiger in the certain knowledge that they were pre-approved.

b.  Ragland's cover-up of the fact that the outcome of the Petition to Transfer Lien proceeding was fixed/rigged by suppressing from the official court docket the true status of the proceeding reflecting the actual status of the case when the Petition to Remove Lis Pendens scheme was first hatched and brought to the Court on or about August 21-30, 2006.

c.  Ragland's further cover-up of the rigged nature of the proceedings suppressing from the Tannehills and their attorney the fact of his and Geiger's ex parte communication and assistance in

preparation of process documents and prior agreement to approve same once filed.

d. Ragland's continued suppression of the material fact of his and Geiger's involvement when he perpetuated the charade of judicial propriety in Ordering a hearing on or about November 7, 2006 knowing of his compromised position in the matter.

e. Ragland's finagling suppression of the material facts concerning his illegal involvement in the preparation of process documents and disqualification required by law to be communicated to the Chief Justice of the Alabama Supreme Court.

147. Plaintiff and Mrs. Tannehill were damaged as the direct and proximate result of defendants' fraudulent misrepresentations in an amount to be determined at trial.

## COUNT EIGHT
## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE ARTICLE 1, SECTION 13 OF THE ALABAMA CONSTITUTION AND SECTION 12-13-16, CODE OF ALABAMA, 1975

(Ragland and Geiger)

148. Plaintiff realleges and hereby incorporates by reference paragraphs1 – 147 as if set out in full herein.

67

149. The Fourteenth Amendment to the United States Constitution states: "No State shall …deprive any person of life, liberty, or property, without due process of law…" and the Constitution of Alabama, 1901, Article 1, Declaration of Rights, Section 13 provides: "Courts to be open; remedies for all injuries; impartiality of justice. That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."

150. Section 12-13-16, Code of Alabama, 1975 provides: "No Probate judge or his clerk or any register shall prepare or assist in the preparation of any paper, document or instrument which is to be heard or determined by such judge or register or which may become a subject of controversy before such judge or register…."

151. In order to ensure that a parties Constitutionally protected right to notice is observed, Section 12-13-41(4) (4) requires probate judges:  "To keep constantly in his office a well-arranged docket, showing the date of the issue and return of all process, the day set for the hearing, the kind of notice ordered, the returns of the sheriff and such other entries as may be necessary to show the true condition of all proceedings pending in the court and all fees accruing in the case and to whom due…."

68

152.  The actions of Tommy Ragland described and alleged herein to prepare or assist in the preparation of papers, documents or instrument, grant ex parte pre-approval and then act on same without ensuring statutorily and constitutionally required notice through service of process made in accordance with the Alabama Rules of Civil Procedure  violated Plaintiff's rights to an impartial judicial tribunal and notice of process under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Constitution of Alabama and damaged the Tannehills.

## COUNT NINE
## VIOLATION OF THE PRIVILEGES AND IMMUNITIES CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE IV, SECTION 108 OF THE ALABAMA CONSTITUITION

(The Honorable Troy King - Alabama and County Citizenship)

153.  Plaintiff realleges and hereby incorporates by reference paragraphs 1 – 152 as if set forth in full herein

154.  The Privileges and Immunities Clause of the United States Constitution provides; "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United

69

States….." the Constitution of Alabama, 1901, Article 1 Declaration of Rights, Section 13 provides: "Courts to be open; remedies for all injuries; impartiality of justice. That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."

155. Section 12-13-16, Code of Alabama, 1975 as pertains to the proscribed Preparation, etc., by probate judge, register, etc., of papers, documents, etc., to be heard, etc., by such judge or register provides in part: "Any probate judge or his clerk or any register who shall prepare or assist in the preparation of any paper, document or instrument in violation of this section shall be guilty of a misdemeanor and shall forfeit the sum of $300.00, one third to the use of the state and two thirds to the use of any person who may institute a civil action for the same; provided further, that any citizen of the county in which the violation may occur may institute a civil action, in his own name, for this penalty in the circuit court of said county."

156.  Cited portion of Section 12-13-16, Code of Alabama, 1975 denies non-Alabama County Citizens, like the Tannehills who are Citizens of the United States and the state of Colorado, standing to exercise their

United States Constitutional rights and privileges of instituting civil action for said penalty in state circuit court.

157. Section 6-5-50, Code of Alabama 1975 provides: "When a penalty is imposed by a statute which does not provide a mode for the recovery, any citizen may commence an action for the recovery of same on behalf of himself and the county in which the penalty is incurred."

158. Said portions of Sections 12-13-16 and 6-5-50, Code of Alabama 1975 abridge the privileges of non-Alabama County citizens to enjoy the same privileges and immunities as Alabama County citizens.

159. Said abridgment of Constitutional, privileges of non-citizens like Plaintiff and Mrs. Tannehill, while providing a safe haven against prosecution for the illegal act(s) of judicial officials as described above taken against non-citizens, is neither necessary nor tailored to serve legitimate government interests.

160. Sections 12-13-16 and 6-5-50, Code of Alabama 1975, are being applied in an intentionally discriminatory manner against Plaintiff and Mrs. Tannehill who are United States Citizens and citizens of a state other than Alabama and whose property interests in Alabama have been violated without privilege of recourse in Madison County Circuit Court or any other Alabama court.

161.  Sections 12-13-16 and 6-5-5, Code of Alabama 1975, violate the Privileges and Immunities Clause of the United States Constitution and the Alabama Constitution.

**COUNT TEN**
**VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE IV, SECTION 108 OF THE ALABAMA CONSTITUITION**

(The Honorable Troy King - Exemption from Operation of General Law)

162.  Plaintiff realleges and hereby incorporates by reference paragraphs 1 – 161 as if fully set forth herein.

163.  The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "No state shall…deny to any person within its jurisdiction the equal protection of the laws. Article IV, Section 108 of the Alabama Constitution provides in pertinent part: "The operation of a general law shall not be suspended for the benefit of any individual, private corporation, or association; nor shall any individual, private corporation or association be exempted from the operation of any general law except as in this article otherwise provided."

164. Section 12-13-16, Code of Alabama, 1975 as pertains to the proscribed Preparation, etc., by probate judge, register, etc., of papers, documents, etc., to be heard, etc., by such judge or register provides in part: "Any probate judge or his clerk or any register who shall prepare or assist in the preparation of any paper, document or instrument in violation of this section shall be guilty of a misdemeanor and shall forfeit the sum of $300.00, one third to the use of the state and two thirds to the use of any person who may institute a civil action for the same; provided further, that any citizen of the county in which the violation may occur may institute a civil action, in his own name, for this penalty in the circuit court of said county."

165. Section 6-5-50, Code of Alabama 1975 provides: "When a penalty is imposed by a statute which does not provide a mode for the recovery, any citizen may commence an action for the recovery of same on behalf of himself and the county in which the penalty is incurred."

166. Section 12-13-16 and 6-5-50, Code of Alabama 1975 on their face exempt from the operation of this section of Alabama state general law equal protection of non-Alabama County Citizens, like plaintiff and Mrs. Tannehill who are Citizens of the United States and the state of Colorado,

whose property interests in Alabama are affected by the actions or omissions of Madison County, Alabama Probate Court judicial officials.

167. Sections 12-13-16 and 6-5-50, Code of Alabama 1975 deny non-citizen such as the Tannehills the equal protection of the law and the inherent protective value afforded by the statute by virtue of the penalty imposed for their violation.

168. Said exemption of non-citizens like the Tannehills from the protective provisions of Alabama general law, while providing a safe haven against prosecution for the illegal act(s) of judicial officials in actions involving non-citizens, is neither necessary nor tailored to serve legitimate government interests.

169. Sections 12-13-16 and 6-5-50, Code of Alabama 1975, are being applied in an intentionally discriminatory manner against the Tannehills who are United States Citizens and citizens of a state other than Alabama and whose property interests in Alabama have been violated without state court recourse or equal protection of the law affording access to the courts for only for Madison County, Alabama citizens.

170. Section 12-13-16 and 6-5-50, Code of Alabama 1975, violate the Equal Protection Clause of the United States Constitution and Article IV, Section 108 of the Alabama Constitution.

## COUNT ELEVEN
## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 10 AND 13 OF THE ALABAMA CONSTITUTION

(No Person Barred From Prosecuting Civil Cause and Remedies for Injuries)

171. Plaintiff realleges and hereby incorporates by reference paragraphs 1 – 170 as if set forth in full herein.

172. The Due Process Clause of the Fourteenth Amendment to the United States Constitution states: "No State shall …deprive any person of life, liberty, or property, without due process of law…" and the Constitution of Alabama, 1901, Article 1. Section 10 provides: "That no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party. Article 1, Section 13 provides: "Courts to be open; remedies for all injuries; impartiality of justice. That all courts shall be open; and that every person,for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."

173. Section 12-13-16, Code of Alabama, 1975 as pertains to the proscribed Preparation, etc., by probate judge, register, etc., of papers,

75

documents, etc., to be heard, etc., by such judge or register provides in part:
"Any probate judge or his clerk or any register who shall prepare or assist in
the preparation of any paper, document or instrument in violation of this
section shall be guilty of a misdemeanor and shall forfeit the sum of
$300.00, one third to the use of the state and two thirds to the use of any
person who may institute a civil action for the same; provided further, that
any citizen of the county in which the violation may occur may institute a
civil action, in his own name, for this penalty in the circuit court of said
county."

174.  Section 6-5-50, Code of Alabama 1975 provides:  "When a
penalty is imposed by a statute which does not provide a mode for the
recovery, any citizen may commence an action for the recovery of same on
behalf of himself and the county in which the penalty is incurred."

175.  Sections 12-13-16 and 6-5-50, Code of Alabama 1975 deny
plaintiff and Mrs Tannehill, who are not citizens of Madison County or
Alabama but have property interests therein, and who are citizens of the
United States and the state of Colorado entitled to due process of law, access
to the Alabama state courts as is provided to citizens of Madison County,
Alabama.

176. Sections 12-13-16 and 6-5-50, Code of Alabama 1975 bar the Tannehills from prosecuting a civil cause of action against Madison County Probate Court officials for violation of their due process and property interests.

177. Said exclusion of non-citizens from access to the courts, thereby provides a safe haven against prosecution for judicial officials such as Ragland and Geiger whose actions violated the law and the Tannehills' rights and is neither necessary nor tailored to serve legitimate government interests.

178. Sections 12-13-16 and 6-5-50, Code of Alabama 1975 are being applied in an intentionally discriminatory manner against the Tannehills who are United States Citizens and citizens of a state other than Alabama and whose property interests in Alabama have been violated without access to and redress of their grievances in the Circuit Madison County, Alabama.

179. Sections 12-13-16 and 6-5-50, Code of Alabama 1975 violate the Due Process Clause of the United States Constitution and Article I, Sections 10 and 13 of the Alabama Constitution.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, plaintiff demands judgment against RICO Defendants in three times the statutory amount of $400,000 or $1,200,000. This amount being the product of three times the base amount of Enfinger's/Heritage Plantation, Inc.'s potential economic loss of $400,000 on the proffered fraudulent bond calculated pursuant to 18 U.S.C. 1964(c) and Section See Section 13A-8-1(14), Code of Alabama 1975. See footnote 17 above.

Plaintiff further demands punitive damages as set by a jury of their peers, plus interest, court costs, attorney's fees, expert witness fees, an amount to compensate plaintiff for any adverse tax consequences as a result of favorable judgment and whatever other and different relief to which plaintiff may be entitled to but mistakenly failed to request.

Plaintiff demands judgment declaring those portions of Sections 6-5-50 and 12-13-16 restricting access to the Alabama Courts to citizens of the state of Alabama and/or Alabama county to be unconstitutional and in violation of plaintiff's Constitutional rights to due process.

Plaintiff seeks a permanent injunction enjoining RICO Defendants from any further racketeering activity.

Plaintiff further seeks a permanent injunction enjoining the Alabama Attorney General from enforcing said unconstitutional Sections of 6-5-50 and 12-13-16, Code of Alabama 1975.

Respectfully submitted this 26ᵗʰ day of June 2008.

James Tannehill, II
3355 N. Academy Blvd. #130
Colorado Springs, CO 80917
719-597-3480